UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ISAAC TURNER                                    CIVIL ACTION

VERSUS                                          NO.  05-2174

BURL CAIN, WARDEN                               SECTION "R"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

## I.    Factual Background

The petitioner, Isaac Turner ("Turner"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On May 14, 1998, Turner and a co-defendant, Ian A. Cazenave, were indicted by a Jefferson Parish Grand Jury for the First Degree Murder of Rodney

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

"Cardell" Robinson.[3]  The Indictment was later amended to charge both defendants with Second

Degree Murder.[4]

The record shows that, at approximately 9:00 p.m., on March 15, 1998, Turner, also known

as "Nuni," arrived by car at the home of Janice Martin in Kenner, Louisiana.[5]  Robinson, the victim,

was standing on the front porch of the house talking with Darrell Moss, also known as "Head", and

Patrice Wiggins-Conway.  Following a discussion between Robinson and Turner, Turner shot

Robinson.  Turner did not deny shooting Robinson, but he instead claims that he did it in

self-defense after Moss told Robinson to shoot Turner.

Turner's 13 year old niece, Shawhna Conway (the daughter of Patrice Wiggins-Conway),

lived with Janice Martin, which was across the street from her mother.  Shortly before the shooting,

Shawhna saw a car belonging to Turner parked on the street.  Shawhna testified that she looked into

the car and saw Turner and Cazenave, her mother's former boyfriend, who was driving.  Shawhna

also claimed that she saw a gun on the backseat, but she could not describe it.  As she passed the car,

Turner got out and walked across the street.  She followed him, calling, "Hey, Uncle Nuni," but he

did not say anything back to her.

Shawhna testified that Turner asked Robinson for a "dime," which is a rock of cocaine.  As

Robinson tried to hand him one rock, Turner asked Robinson for all of the rocks he had.  When

Robinson asked what Turner meant, Turner pulled out a gun from under his shirt and shot Robinson

---

[3]St. Rec. Vol. 1 of 10, Indictment, 5/14/98.

[4]*Id*. (handwritten amendment dated 11/6/98).

[5]The facts were taken from the opinion on direct appeal issued by the Louisiana Fifth Circuit Court of Appeal. *State v. Cazenave*, 772 So.2d 854, 855-59 (La. App. 5th Cir. 2000); St. Rec. Vol. 1 of 10, 5th Cir. Opinion, 00-KA-183, 10/31/00.

in the back as he turned to get away.  She stated that, when Robinson hit the ground, Turner took money from his pocket and rocks of cocaine from his hand.

Patrice Wiggins-Conway also testified that she went to talk to Cazenave in the parked car when Turner first arrived.  Cazenave repeatedly told her to get away from the car as he watched Turner.  She also stated that she saw an AK-47 with a banana clip, which was partially covered by a towel, on the front seat of the car next to Cazenave.  When she saw the gun, she yelled a warning to Robinson and then she heard two shots.

Moss testified similarly to the other witnesses stating that Turner asked for drugs from Robinson.  When Robinson handed him the drugs, Turner pretended to pay for it and instead pulled out a gun and told Robinson to give him all of it.  Robinson told Turner not to do it and Turner shot him as he tried to get away.

Turner retained attorney Michael F. Melton as his counsel.  Turner and Cazenave were tried before a jury on June 17, 18, 21, and 22, 1999 and were both found guilty as charged of second degree murder.[6]  On July 15, 1999, the Trial Court sentenced Cazenave to serve a life sentence without benefit of parole, probation or suspension of sentence.[7]

That same day, Turner's newly retained counsel, Martin Regan, filed a Motion for New Trial which the Trial Court later denied at a hearing held July 22, 1999.[8]  After the running of legal delays,

---

[6]St. Rec. Vol. 3 of 10, Trial Minutes, 6/17/99; Trial Minutes (2 pages), 6/18/99; Trial Minutes, 6/21/99; Trial Minutes, 6/22/99; Verdict Form(Turner), 6/22/99; Verdict Form (Cazenave), 6/22/99; St. Rec. Vol. 7 of 10, Trial Transcript, 6/21/99; St. Rec. Vol. 8 of 10, Trial Transcript, 6/22/99.

[7]St. Rec. Vol. 3 of 10, Sentencing Minutes (Cazenave), 7/15/99; St. Rec. Vol. 8 of 10, Sentencing Transcript (Cazenave), 7/15/99.

[8]St. Rec. Vol. 3 of 10, Motion for New Trial, 7/15/99; Minute Entry, 7/22/99; St. Rec. Vol. 9 of 10, Transcript, 7/22/99.

the Trial Court sentenced Turner on July 26, 1999, to serve life imprisonment without benefit of parole, probation or suspension of sentence.[9]

The appeals of both defendants were consolidated before the Louisiana Fifth Circuit Court of Appeal.[10]  Both defendants challenged only the sufficiency of the evidence.  Turner specifically argued that the evidence showed that he acted in self-defense or that the gun discharged accidentally and that the witness testimony was inconsistent and not credible.  The Louisiana Fifth Circuit rejected these arguments, and those raised by Cazenave, and found that the evidence was sufficient to support the verdicts as to both defendants pursuant to the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).[11]

Turner's subsequent writ application to the Louisiana Supreme Court was denied without reasons on October 26, 2001.[12]  His conviction became final 90 days later, January 24, 2002, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

## II.   <u>Procedural Background</u>

---

[9]St. Rec. Vol. 3 of 10, Sentencing Minutes (Turner), 7/26/99; St. Rec. Vol. 4 of 10, Sentencing Transcript (Turner), 7/26/99.

[10]*State v. Cazenave*, 772 So.2d at 854; St. Rec. Vol. 1 of 10, 5th Cir. Opinion, 00-KA-183 c/w 00-KA-184, 10/31/00; St. Rec. Vol. 8 of 10, Appeal Brief (Turner), 00-KA-184 c/w 00-KA-183, 5/30/00.

[11]The Court also instructed that Turner and Cazenave be notified that the limitations period for filing for post conviction relief was two years, not three.  *Id*.

[12]*State v. Turner*, 799 So.2d 1151 (La. 2001); St. Rec. Vol. 2 of 10, La. S. Ct. Order, 2000-K-3297, 10/26/01; St. Rec. Vol. 1 of 10, La. S. Ct. Letter, 2000-K-3297, 12/5/00; St. Rec. Vol. 10 of 10, La. S. Ct. Writ Application, 00-K-2739, 12/4/00 (postmarked 11/30/00).

On October 22, 2002, Turner's retained counsel, Martin Regan, filed an Application for Post Conviction Relief in the Trial Court alleging that trial counsel, Michael F. Melton, provided ineffective assistance for the following reasons:[13] (1) failure to conduct pretrial investigation; (2) failure to interview witnesses; and (3) lack of trial preparation, including the failure to develop a strategy or ask for a jury charge on justification. The Trial Court denied the Application on November 4, 2002, finding that the errors alleged arose from counsel's trial strategy and did not constitute deficient performance.[14] The Court also held that Turner waived any challenge to the failure to charge the jury on justification.

On December 30, 2002, Turner's counsel sought timely review from the Louisiana Fifth Circuit.[15] The Court granted the Writ on February 4, 2003, and remanded the ineffective assistance of counsel claim back to the Trial Court for an evidentiary hearing.[16]

On May 2, 2003, and November 21, 2003, the Trial Court held evidentiary hearings at which Turner and his former trial counsel, Melton, testified.[17] The Trial Court took the matter under submission allowing both Turner's counsel and the State to file post-hearing memoranda.

In the meantime, on May 30, 2003, the Louisiana Supreme Court suspended Michael F. Melton, Turner's former trial counsel, from the practice of law citing as ethical violations, among

---

[13] St. Rec. Vol. 4 of 10, Application for Post Conviction Relief, 10/22/02.

[14] St. Rec. Vol. 4 of 10, Trial Court Order, 11/4/02.

[15] St. Rec. Vol. 3 of 10, Notice of Intent to Seek Writs, 11/12/02; St. Rec. Vol. 4 of 10, 5th Cir. Writ Application, 02-KH-1287, 12/30/02.

[16] St. Rec. Vol. 4 of 10, 5th Cir. Order, 02-KH-1287, 2/4/03.

[17] St. Rec. Vol. 4 of 10, Minutes of Evidentiary Hearing, 5/2/03; Minutes of Evidentiary Hearing, 11/21/03; St. Rec. Vol. 5 of 10, Transcript of Evidentiary Hearing, 5/2/03.

other things, the failure to communicate with Turner and the failure to appear on several hearing and trial dates in Turner's criminal proceedings.[18]

After receipt of counsel's memoranda,[19] the Trial Court ruled in open court on February 13, 2004, finding that Melton's performance was deficient, relying heavily on the ethical violations noted by the Louisiana Supreme Court in its prior disciplinary decision.[20]  The State sought review of this ruling from the Louisiana Fifth Circuit.[21]

On October 7, 2004, the Louisiana Fifth Circuit granted the State's Writ Application and reversed the Trial Court.[22]  The Court held that the alleged deficiency's in counsel's performance did not prejudice Turner's defense or affect the outcome of the case under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Turner's counsel filed a Writ Application with the Louisiana Supreme Court seeking review of this ruling.[23]  The Court denied the Application without reasons on March 11, 2005.[24]

## III.   Federal Petition

On June 6, 2005, Turner filed a petition for federal habeas corpus relief in which he alleges that the Louisiana Trial Court properly granted his application of post conviction relief on the

---

[18]*In re Melton*, 848 So.2d 519 (La. 2003); St. Rec. Vol. 10 of 10, La. S. Ct. Disc. Ruling, 2003-B-0516, 5/30/03.

[19]St. Rec. Vol. 5 of 10, Post Hearing Memorandum (Turner), 1/9/04; Memo in Opposition to Application for Post Conviction Relief, 1/12/04.

[20]St. Rec. Vol. 5 of 10, Minute Entry, 2/13/04; Judgment and Reasons, 2/13/04; St. Rec. Vol. 10 of 10, Transcript of Evidentiary Hearing, 2/13/04.

[21]St. Rec. Vol. 10 of 10, 5th Cir. Writ Application, 04-KH-426, 4/14/04; St. Rec. Vol. 5 of 10, Notice of Intent, 3/10/04; Motion for Extension of Time to Seek Writs, 3/10/04.

[22]St. Rec. Vol. 5 of 10, 5th Cir. Order, 04-KH-426, 10/7/04.

[23]St. Rec. Vol. 10 of 10, La. S. Ct. Writ Application, 04-KP-2739, 11/5/04.

[24]*State v. Turner*, 896 So.2d 61 (La. 2005); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2004-KP-2739, 3/11/05.

ineffective assistance of counsel issue and the Appellate Court erred in reversing that ruling.[25]

Under a broad reading of his memorandum in support of the petition, Turner seeks review by this

Court of this ineffective assistance of counsel claim.  In its opposition, the State argues that the last

reasoned state court opinion offered by the Louisiana Fifth Circuit applied the correct legal principal

found in *Strickland* and reasonably applied it the facts of Turner's case.

## IV.   <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[26] applies to Turner's petition, which is deemed filed in this court under the

federal "mailbox rule" on May 20, 2005.[27]

The threshold questions in habeas review under the amended statute are whether the petition

is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court;

*i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default"

on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b),

---

[25]Rec. Doc. No. 1.

[26]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Turner's federal habeas petition on June 6, 2005, when the filing fee was paid.  Turner dated his signature on the petition on May 20, 2005.  This is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee does not alter the application of the mailbox rule to his pro se petition.  *Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

(c)).  In this case, the State concedes that Turner's petition is timely and the claim is exhausted.  The Court will therefore proceed to the merits of Turner's claim.

## V.    <u>Standards of Review on the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law and mixed questions of fact and law.  A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  Title 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

## VI.   **Ineffective Assistance of Counsel**

Under a broad reading, Turner seeks review of alleged deficiencies in his counsel performance which he argues prejudiced the outcome of his trial. The Louisiana Fifth Circuit Court of Appeal provided the last reasoned decision on this issue. *Ylst*.

9

Relying on the standards set forth in *Strickland v. Washington*, 466 U.S. at 668, the Court resolved that counsel's performance was not prejudicial and did not affect the outcome of the trial. The Court considered first that the errors addressed by the Louisiana Supreme Court in the disciplinary matter concerned pretrial conduct, implying to the reader that these matters did not affect the outcome of trial. The Court also resolved that the remainder of the challenges to Michael Melton's performance did not demonstrate prejudice.

The Louisiana Fifth Circuit held that counsel reasonably chose not to interview the State's witnesses because of the detailed nature of the statements given to police. Also, there was no showing that the alleged "uncalled witnesses" referenced by Turner could have been found or that their testimony would have refuted the essential elements of the crime charged. The Court noted as well that Turner's alleged witnesses could not be located to testify at the post conviction evidentiary hearing.

Further, the Court held that Turner understood his rights against self-incrimination and strategically chose to testify as the only means of strategically refuting and discrediting the State's witnesses. Finally, the Court determined that the general charge given by the trial court on justification and self-defense was adequate thus leaving no need for counsel to have requested a separate charge on justification. Based on these findings, the Louisiana Fifth Circuit reversed the Trial Court's granting of the application for post conviction relief.

A.    **The *Strickland* Standard**

The standard for evaluating counsel's performance is set forth in *Strickland*, in which the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice

therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance

of counsel Turner "must demonstrate, by a preponderance of the evidence, that his counsel was

ineffective."  *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.

2000), *cert. denied*, 531 U.S. 1167 (2001).

       To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails

to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*,

262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show

that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466

U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's

performance must take into account the reasonableness of counsel's actions in light of all of the

circumstances.  *See Strickland*, 466 U.S. at 689.  "[I]t is necessary to 'judge . . . counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  *Lockhart*

*v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must

overcome a strong presumption that the conduct of his counsel falls within a wide range of

reasonable representation.  *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson*

*v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

       In order to prove prejudice, petitioner "must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not

merely allege, prejudice."  *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*,

18 F.3d 311, 314-15 (5th Cir. 1994).  In this context, a reasonable probability of prejudice is "a

probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (*quoting Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must determine whether the state court's failure to grant relief to Turner was contrary to or an unreasonable application of *Strickland*.

**B.     Failure to Subpoena and Investigate Witnesses in Preparation for Trial**

Turner argues that his trial counsel failed to subpoena witnesses which could have provided mitigating evidence and evidence to support a theory of self-defense.  He also argues that counsel did not adequately prepare for trial because he failed to interview the State's witnesses and failed to introduce evidence of the victim's violent tendencies, which Turner claims was a direct result of the failure to interview witnesses who would have told counsel this.

"'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  Turner does not identify any particular witnesses by full name nor does he present this Court with any indication of the testimony which these uncalled witnesses would provide.  His claim in this regard is tenuous at best.

Nevertheless, at the post conviction evidentiary hearing, Melton testified that Turner gave him the name of only one witness who would serve as a character witness, not a fact witness.[28] Melton, however, was hesitant to bring Turner's character up at trial.[29]  Melton stated that, based on his meetings with the co-defendants attorney, the original defense strategy was one of alibi, Turner and his co-defendant were not there.[30]  Shortly before the first trial date, however, based on Turner's statements, the strategy became one of self-defense.[31]  Melton further testified that, as a result of his

---

[28]St. Rec. Vol. 5 of 10, Transcript of Evidentiary Hearing, p. 27, 5/2/03.

[29]*Id.*

[30]*Id.*, at p. 26.

[31]*Id.*, at pp. 26, 31.

investigation, he did not learn of the names of any other witnesses who were at the crime scene.[32]

He also indicated at the hearing that he had Turner's mother and wife standing by to testify if

necessary, although they were not called.[33]

Melton testified that, when they eventually went to trial, he was "absolutely" prepared and

was not surprised by any of the witness testimony or evidence presented by the State.[34]   He

acknowledged that his decision to not make an opening argument was strategic.[35]   Melton further

testified that because of his preparedness, he was able to impeach three of the four state witnesses.[36]

He did this so well that the State chose not to call its final witness.[37]

On cross-examination at the evidentiary hearing, Turner conceded that he saw Melton on at

least three occasions to prepare for trial.[38]   He also testified that he understood everything that

Melton told him at their various meetings.[39]   Turner also acknowledged that his family was able to

communicate with Melton, though with some difficulty, and that Melton told his family that he was

putting the case together and had hired an investigator.[40]   Turner also knew that Melton sent an

---

[32]*Id.*, at p. 27.

[33]*Id.*, at p. 45.

[34]*Id.*, at pp. 29, 46.

[35]*Id.*, at pp. 34, 41.

[36]*Id.*, at pp. 42, 44.

[37]*Id.*, at pp. 42.

[38]*Id.*, at p. 61.

[39]*Id.*, at p. 62.

[40]*Id.*, at pp. 67-68.

investigator to look for two witnesses, Jennifer and Kevia, who were allegedly with Patrice that night, but they could not be found.[41]

A review of the trial transcripts supports Melton's testimony.  After the State's opening remarks, Melton waived the opening statement reserving the right until the start of his case.[42]  At a bench conference, Melton explained to the judge that he wanted to reserve the right to give the opening statement at the beginning of the defense case because he was not sure what he could prove.  Counsel for Cazenave made the same request and the Court allowed them both to reserve opening arguments.[43]

By this decision, Melton was able to reserve his right to make his argument until after the State had presented its case-in-chief.  This would allow him to refine any such argument to address the evidence and testimony actually presented by the State.  This was not indicative of deficient performance but a strategic effort to avoid revealing anything about the defendants' cases until counsel were sure what the State would present in its case.  Melton reiterated his strategy to "not give away [his] whole case" at another bench conference on the second day of trial.[44]

Melton also effectively cross-examined each of the State's witnesses.  The questions were relevant and challenging of the contradictions made by each witness.[45]  For example, on cross-examination, Melton questioned every detail of Shawhna Conway's testimony.  She testified

---

[41]*Id.*, at p. 68.

[42]St. Rec. Vol. 7 of 10, Trial Transcript, pp. 28-29, 6/21/99.

[43]*Id.*

[44]St. Rec. Vol. 8 of 10, Trial Transcript, p. 26, 6/22/99.

[45]*See e.g.*, St. Rec. Vol. 7 of 10, Trial Transcript, 6/21/99, pp. 61-69 (Shawhna Conway), pp. 111-113 (Officer Mark Russo), pp. 138-156 (Patrice Wiggins-Conway); St. Rec. Vol. 8 of 10, Trial Transcript, 6/22/99, pp. 23-35 (Larry Robinson), pp. 52-76 (Darrell Moss).

repeatedly that she watched as Turner asked Robinson for drugs and, as Robinson was handing him the drugs, Turner asked for all of what Robinson had. She said that Robinson turned to run and Turner shot him. She claimed to have remained there to see Robinson take the drugs and money from Robinson as he laid dying on the ground. She then ran around the corner of the house where she heard a second shot and could see Turner get into the car with Cazenave and drive off.

However, when Melton cross-examined her mother, Patrice Wiggins-Conway, he was able to obtain completely contrary testimony. Patrice Conway testified that Shawhna ran away as soon as the gunshot rang out and went inside to hide in a closet. She stated that it took her twenty minutes to find her. She also testified that there was only one shot. This too was confirmed on cross-examination of Officer Alan Abadie, who confirmed that only one 9 mm casing was found and only one shot was reported.[46]

Another contradiction created by Melton's cross-examination is that Patrice Conway claimed that she and Patrick Jackson dragged Robinson into a house after he was shot. Yet, on cross-examination by Melton, Larry Robinson, the victim's uncle, said he and Patrick Jackson dragged Robinson inside and that Patrice was lying.[47] Melton also was able to get Darrell Moss to admit before the jury that he had lied to the grand jury about the events on the night of the murder.[48]

Melton was able to use all of the State's witnesses to call into question the entirety of Shawhna's testimony and point out the many contradictions between the respective stories of the State's fact witnesses. Considering Melton's performance at trial, Turner has failed to establish any

---

[46]St. Rec. Vol. 8 of 10, Trial Transcript, pp. 15-16, 6/22/99.

[47]*Id.*, pp. 24-25.

[48]*Id.*, pp. 53-55.

deficiency and has shown no prejudice resulting from Melton's strategic choice of witnesses for the defense or his preparation to question the witnesses brought by the State.  The state court's denial of relief on this claim was therefore not contrary to, or an unreasonable application of, *Strickland*. Turner is not entitled to relief on this claim.

### C.    Failure to Adequately Advise of Effects of Testifying at Trial

Turner also claims that counsel failed to advise him that he did not have to testify at trial because of the potential for self-incrimination.  Melton testified at the evidentiary hearing that he told Turner several things about testifying at trial in light of the self-defense argument being asserted.  He recalled telling Turner during their pretrial visits that he should be natural, not nervous, and tell the jury exactly what he had told him about that night.[49]  He was unsure of what warnings he may have given him but he felt that the issue of self-incrimination was made clear to Turner.  He also recalled warning Turner that the district attorney would try to "trip him up."[50]

Melton also testified that it was apparent from voir dire that the jurors were going to want to hear what Turner had to say about his alleged self-defense.[51]  Melton believed that this group of jurors did not accept that a defendant did not have to testify and that the decision not to testify could not be held against him.  In light of that, Melton and Turner made the decision that Turner would have to take the stand.[52]  Melton knew that Turner had no prior criminal convictions and his prior

---

[49]St. Rec. Vol. 5 of 10, Transcript of Evidentiary Hearing, p. 34, 5/2/03.

[50]*Id.*, at p. 35.

[51]*Id.*, at p. 42.

[52]*Id.*, at pp. 42-43.

arrest on a homicide, which was dropped, could not be used at trial.[53]  Melton knew this because he in fact represented Turner at the screening hearing which led to the dismissal of the prior unrelated charge.[54]

On cross-examination at the evidentiary hearing, Turner testified that he understood everything that Melton told him at their various meetings and at trial.[55]  Turner also stated that he hired Melton to tell him what was best and Melton felt it would be best if he testified.[56]  He knew his life was on the line and he was satisfied that he was able to tell the jury his side of the story.[57]

The Louisiana Fifth Circuit resolved that the import and impact of his testimony was made clear to Turner.  This was a reasonable conclusion in light of the evidence before that Court.  Although neither Melton nor Turner were certain as to what was said, Turner was aware of the impact his testimony would have on the trial and weighed with counsel the decision to testify.  This does not demonstrate a deficient effort by Melton.

Furthermore, Turner has failed to establish any prejudice resulting from the decision that they made together for him to testify.  In fact, Turner concedes that he was satisfied that he was able to tell his story.  Counsel's performance is not to be judged on whether it was successful but whether a particular act or omission of counsel was unreasonable under the circumstances of the case.  *Strickland*, 466 U.S. at 689 (citing *Engle v. Isaac*, 456 U.S. 107, 133-134 (1982)); *Burger v. Kemp*, 483 U.S. 776, 789 (1987).  Turner has not met this burden.

---

[53]*Id.*, at pp. 47-48.

[54]*Id.*

[55]*Id.*, at p. 62.

[56]*Id.*, at p. 63.

[57]*Id.*, at pp. 63-64.

Turner recognized that the circumstances of his case necessitated that he testify at trial. The state court's denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*. Turner is not entitled to relief on this claim.

### D.      Failure to Request a Jury Instruction on Justification

Turner further claims that counsel failed to request a jury instruction on justification. While it is true that counsel made no such special request, the charges read by the Trial Court in fact included an instruction on justification:[58]

> JUSTIFIABLE HOMICIDE
>       A homicide is justifiable:
> 1)  When committed in self defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
> 2)  When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.

The Louisiana Fifth Circuit determined that this charge was adequate under Louisiana law. In fact, the language used in this instruction tracks the language of La. Rev. Stat. Ann. § 14:20(A)(1) and (2), which defines justifiable homicide. Under La. Code Crim. P. art. 807, a requested special charge "need not be given if it is included in the general charge or in a another special charge to be given."

Thus, for Melton to have requested another charge on justification would have been redundant and unnecessary under Louisiana law. Turner has not shown how his failure to make an unnecessary request amounted to deficient performance. *Cf. Green v. Johnson*, 160 F.3d 1029, 1037

---

[58]St. Rec. Vol. 3 of 10, Jury Charges, p. 20.

(5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness), *cert. denied*, 525 U.S. 1174 (1999).  Turner also can not show prejudice since the appropriate charge on justifiable homicide was in fact given by the Trial Court.

The denial of relief on this claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent.  Turner is not entitled to relief on this claim.

### E.   Ethical Violations Prejudiced Trial

Turner concludes that counsel's ethical violations of failing to appear for hearing and trial dates, failure to maintain regular contact with Turner or return telephone calls, and failure to advise Turner that the State had to prove its case beyond a reasonable doubt.  At the outset, the Supreme Court has noted that *Strickland* is the appropriate standard to address claims regarding the effect of ethical violations by an attorney which do not arise from multiple representations or conflicts of interest.  *See Mickens v. Taylor*, 535 U.S. 162 (2002).  Under the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel.  *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1995).

In this case, there is no question that the Louisiana Supreme Court sanctioned Melton for ethical violations arising during his representation of Turner and the representation of other clients. Each violation listed and presented here by Turner occurred in the pretrial stages of Turner's case. Turner has never established that any of Melton's questionable pretrial conduct amounted to constitutionally deficient performance during the trial or prejudiced the ultimate outcome of his case. Without this, Turner has not established a constitutional denial of effective counsel under *Strickland*.

As discussed above, Melton was prepared for trial and effectively challenged the State's case during trial, which is what is ultimately required by the United States Constitution to avoid prejudice to the defendant in a criminal trial. *See United States v. Cronic*, 466 U.S. 648, 658-59 (1984). Turner's case did not amount to a circumstance of magnitude where the court can assume prejudice. *Id.*; *Mickens v. Taylor*, 535 U.S. 162 (2002). Turner has failed to establish "a reasonable probably that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The state court's denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Turner is not entitled to relief on this claim.

## VII.   Recommendation

It is therefore **RECOMMENDED** that Isaac Turner's petition for issuance of Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____29th_____ day of _____November_____, 2006.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**